Order and Concurring and Dissenting Opinion filed September 9, 2004









Order and Concurring and Dissenting Opinion filed
September 9, 2004.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00166-CV

____________

 

MICHAEL
GLEASON, Appellant

V.



JOHNNY ISBELL, AS MAYOR OF THE CITY OF PASADENA (ACITY@),
TEXAS, AND INDIVIDUALLY; FOY LEE CLARK, AS CITY ATTORNEY AND INDIVIDUALLY; ANDY
HELMS, AS DIRECTOR OF FINANCE AND PURCHASING AND CHIEF OF STAFF OF THE CITY AND
INDIVIDUALLY; DAN WEATHERS, AS MUNICIPAL JUDGE AND INDIVIDUALLY; JOHN S.
SCHNEIDER, JR., AS ASSISTANT CITY ATTORNEY AND INDIVIDUALLY; J. MICHAEL COMAN,
AS ASSISTANT CITY ATTORNEY AND INDIVIDUALLY; GENE L. LOCKE, AS ATTORNEY FOR
GENE AIGGY@
GARISON, JOHNNY ISBELL, LYNNE SUMMERS, AND CITY COUNCIL, AND INDIVIDUALLY;
LYNNE SUMMERS, AS CITY SECRETARY AND INDIVIDUALLY; THE CITY; THAD GINN, AS
HEALTH DEPARTMENT DIRECTOR OF THE CITY AND INDIVIDUALLY; JEFF GABBERT, AS
BUILDING OFFICIAL OF THE CITY AND INDIVIDUALLY; E.C. SUMMERS, AS MAINTENANCE
DIRECTOR OF THE CITY AND INDIVIDUALLY; TOMMY SHANE, AS CHIEF OF POLICE OF THE
CITY AND INDIVIDUALLY; GENE AIGGY@ GARISON, AS COUNCILMAN FOR CITY COUNCIL DISTRICT AD@
AND INDIVIDUALLY; BRUCE K. WALTERS, AS CITY COUNCILMAN AND INDIVIDUALLY; RUSTY
CAMPBELL, AS HEALTH AND BUILDING INSPECTOR FOR THE CITY AND INDIVIDUALLY; GARY
E. WORSTELL, AS PRESIDENT OF PASADENA FURNITURE LIQUIDATORS AND INDIVIDUALLY;
AND STACY SCOTT, AS POLICE OFFICER FOR THE CITY AND INDIVIDUALLY; Appellees

 



 

On Appeal from the 189th District Court

Harris County, Texas

Trial Court Cause No. 01-04396

____________________________________________________________________________________

 

 

C O N C U R R I  N G  
AND   D I S S E N T I N G   O P I N I O N  

 

I respectfully concur in the granting of appellant Michael
Gleason=s motion to strike or withdraw AAppellant=s Tentative Interim Partial Motion
for Rehearing En Banc,@ but I respectfully disagree with the court=s granting of his motion for an
extension of time to file another motion for rehearing.  I write to explain the reasons for this
disagreement and to address the important and seldom-discussed responsibility
of pro se litigants to act with dignity, respect, and civility in their
dealings with courts, counsel, and other participants in the legal system.

Background








This case was submitted without oral argument on May 10,
2004.  In a unanimous opinion issued on
June 3, 2004, a three-member panel of this court affirmed the trial court=s summary judgment against
appellant.  On June 21, 2004, appellant
filed AAppellant=s Tentative Interim Partial Motion
for Rehearing En Banc,@[1] in which he characterizes the panel=s opinion as Adisingenuous, dishonest[,] and
retaliatory@ as well as Afalse, corrupt[,] and fraudulent.@ 
Appellant=s motion is rife with personal insults and contains
conclusory allegations of corruption and criminal conduct by the court and its
staff.  In his motion for rehearing,
appellant also attacks the integrity and character of the Chief Justice and the
other panel members who heard this case.[2]
The motion states, among other things, that the panel=s opinion contains Asham reasons@ for the court=s ruling and constitutes Aunlawful [,] unprofessional [,] and
unethical judicial and attorney retaliation.@ 
Appellant also accuses the court of creating precedent Ato retaliate against future pro se
and politically incorrect litigants.@ 
Appellant states that the court=s opinion Ainvites systemic attorney and
judicial corruption, and promotes general blatant dishonesty.@ 
Appellant accuses the court of Amisrepresenting@ or Afraudulently misrepresenting@ more than a dozen times in his motion
for rehearing, but does not identify a single alleged misrepresentation or
inaccuracy in the panel=s recitation of the facts or the issues.  Appellant concludes his motion with the
following testimonial:

I suggest that practicing attorneys be asked whether
they have had cases where the judge=s
statement of facts were false.  Every
practicing attorney to whom I have asked this question has responded in the
affirmative; some have told me that the practice is, unfortunately, quite
common, and that judicial misrepresentation of facts of cases has produced a
crisis in their professional lives.  They
feel that their work is subject to the whim of judges who play God with the
facts of a case, changing them to make the case come out the way the judge
desires.

 

Appellant now asks the court to strike his motion for
rehearing or allow him to withdraw it. 
In his motion to withdraw, appellant states that he Aapologizes for the inappropriate,
disrespectful criticisms of the Court included in his panic driven attempt to
quickly formalize his disappointment and disagreement with the Court=s opinion in this appeal.@ 
Appellant filed, concurrently with his motion to withdraw, a separate
motion for extension of time.  In that
filing, appellant explains the need for more time, stating:

Because of the unusual challenge presented by the
Court=s seemingly bad faith, frivolous opinion, extensive
and intensive research time in the public law libraries and efforts to obtain
counsel . . . will be required to prepare a meaningful response.

 








In the motion for extension of time, appellant makes remarks
similar to those contained in the motion for rehearing he has asked to
withdraw, including the following:

 . . .
[Appellant] will attempt to type an emergency tentative draft of the first
impression, preliminary issues of his proposed motion for rehearing en banc in
order to have, at least, these preliminary issues included in the record in
case the Court=s retaliation against appellant=s objections to its seemingly bad faith, frivolous
opinion is as unreasonable and vicious as its retaliation against appellant=s objections to the general fraud and corruption of
defendants= motion for summary judgment and the dishonest
attorneys and witnesses who prepared and presented it to the trial court and to
this Court.

. . . 

The very unusual issues of seemingly judicial and
court=s staff attorney fraud and professional misconduct
here will surely require very intensive and innovative research . . .

 

In the motion for extension of time,
appellant again accuses this court and its staff of corruption, criminal
conduct, and other improprieties of a serious nature.  As before, appellant=s filing
contains inflammatory rhetoric that is disrespectful and inappropriate.

This recent round of filings is
not the first time appellant has crossed the line between zealous advocacy and
inappropriate conduct.  Many of his
previous filings in this court contain disparaging personal remarks and
invective directed to judges, lawyers, and parties involved in this
litigation.  Though not a lawyer,
appellant should have been aware of the boundaries of appropriate conduct.  By his own admission, appellant has exceeded
them. 








In keeping with the tone and
character of his previous filings in this court, in his motion for rehearing,
appellant does not focus on the merits of the case or the legal issues
involved, but instead uses this as a platform to launch personal attacks on virtually
everyone involved in the case C
including opposing parties and counsel, the trial judge who ruled against him
in the court below, the appellate justices that decided his case on appeal, and
even the clerk=s office and the court=s
professional staff.  Rather than direct
his motion for rehearing to the court=s
holding, logic, rationale, or factual recitation, appellant has instead engaged
in rampant and
indiscriminate name-calling and vitriol. 
The statements in appellant=s motion for rehearing are entirely
inappropriate, a fact which appellant himself acknowledges in his motion to
withdraw his motion for rehearing. 

Responsibilities
of the Pro Se Litigant

Appellant=s brief,
his motion for rehearing, his motion for extension of time, and even his motion
to withdraw and his Aapology@ are rife
with inappropriate, offensive, and intemperate comments.  This incivility and lack of decorum reflects
a fundamental disrespect for our legal system and all who participate in the
legal process.  The ethical rules require
lawyers to demonstrate respect for the legal system and those who serve
it.  See Tex. Disciplinary R. Prof=l
Conduct preamble 4, reprinted in Tex.
Gov=t Code Ann., tit. 2, subtit. G, app. A
(Vernon 1998).  Though non-lawyers, such
as appellant, are not subject to the Texas Disciplinary Rules of Professional
Conduct, their demeanor and conduct as pro se litigants should be measured by
the same standard.  See LaGoye v.
Victoria Wood Condo. Ass=n, 112
S.W.3d 777, 787 (Tex. App.CHouston
[14th Dist.] 2003, no pet.) (stating pro se litigants are Aheld to
the same standards as licensed attorneys . . . .@).  Pro se litigants have no less of an
obligation than lawyers to act with respect and civility in their dealings with
the court and those who participate in the legal process.  See Mansfield State Bank v. Cohn, 573
S.W.2d 181, 184B85 (Tex.
1978) (stating that A>[t]he
right of self-representation is not a license to abuse the dignity of the
courtroom=@)
(quoting Faretta v. California, 422 U.S. 806, 835 n.46, 95 S. Ct. 2525,
2541, 45 L. Ed. 2d 562 (1975)). 
Likewise, judges have no less of an obligation to safeguard the
integrity of the public courts from the unruly and contumacious behavior of pro
se litigants than they do to protect the court and legal system from
unprofessional conduct of counsel.








Judges are the guardians of the
court as an institution and
so they must insist that all who come before the court act with dignity,
decorum, and respect.  Even though
judges, on a personal level, might be willing to suffer insults and personal
attacks like those contained in appellant=s filings, they must, by virtue of
their office, protect the dignity of the court from such offensive and
unacceptable conduct.  As individuals, the
justices of this court may not have garnered appellant=s respect or esteem, but, we must, as
judges, demand respect for this court as an institution. The
Fourth Court of Appeals, sitting en banc, explained this important obligation,
stating:

A distinction must be
drawn between respectful advocacy and judicial denigration.  Although the former is entitled to a
protected voice, the latter can only be condoned at the expense of the public=s confidence in the
judicial process.  Even were this court
willing to tolerate the personal insult levied by [counsel], we are obligated
to maintain the respect due this Court and the legal system we took an oath to
serve.

 

In re Maloney, 949
S.W.2d 385, 388 (Tex. App.CSan
Antonio 1997, no writ) (en banc) (per curiam). 

Unquestionably,
litigants and counsel have the right (and sometimes the responsibility) to
criticize judges and their rulings.  But
when doing so in a court proceeding, they should speak and write civilly, using
language that is respectful of the courts and our system of justice, because,
in addition to performing judicial functions, judges serve as symbols of both
the judicial system and the administration of justice.[3]
 The public=s
perception of the legal process is greatly influenced by the tone and decorum
of the proceedings.  Conduct that offends
the dignity of the legal process undermines the image of our justice system and
compromises its credibility in the eyes of the public.








As
guardians of the public=s
confidence in our legal system, judges must maintain a strong commitment to
both inspire and demand the highest standards of civility and personal behavior
from litigants and lawyers appearing in the courts of this state.  For those appearing in appellate courts,
these standards are embodied in the Standards for Appellate Conduct, which
were adopted and promulgated by the Texas Supreme Court and the Court of
Criminal Appeals.[4]  Primarily aspirational, the Standards for
Appellate Conduct do not alter the existing standards of conduct under the
Texas Disciplinary Rules of Professional Conduct, the Texas Rules of
Disciplinary Procedure, or the Code of Judicial Conduct, but they set forth the
basic standards of behavior expected in Texas appellate courts.  By levying intemperate and demeaning personal
attacks against the panel members who heard his case and acting with incivility
in his dealings with this court, appellant has violated these standards.  Moreover, appellant has demonstrated a
pattern of abusive and inappropriate conduct directed not only to the justices
of this court but to other participants in the legal process as well.








In
addition to repeatedly denigrating members of this court, appellant has
unleashed similar attacks on appellees[5]
and their counsel,[6]
as well as the trial judge[7]
that entered judgment against him in the court below.  Although parties are Agranted
great latitude in presenting arguments in an appellate court,@ when
they Aspeak
disrespectfully of the trial court, they >exceed
their rights and evidence a want of proper respect for the court . . . .=@  Johnson v. Johnson, 948 S.W.2d 835,
840B41 (Tex.
App.CSan
Antonio 1997, writ denied) quoting Mossop v. Zapp, 179 S.W. 685 (Tex.
Civ. App.CGalveston 1915, no writ)).  The appellate courtroom is not the forum to
vent personal grievances against the trial judge that decided the case or the
appellate panel that reviewed it.  And it
is certainly not the proper venue for accusations of criminal conduct,
corruption, or professional misconduct on the part of the judges and lawyers
involved in the case.  








Furthermore,
ad hominem attacks on courts, opposing parties, or opposing counsel are
ineffective and inappropriate, whether made by attorneys or pro se
litigants.  See Lookshin v. Feldman,
127 S.W.3d 100, 107 (Tex. App.CHouston
[1st Dist.] 2003, pet. denied) (stating Athis
Court will not allow the appeals process to be used by a litigant to make ad
hominem attacks on an opposing party. . . .@); Johnson,
948 S.W.2d at 840 (stating ad hominem attacks against judges who have rendered
an adverse decision are both ill-advised and improper). There is no
justification for personal attacks in the courts of this state.  As a pro se litigant, appellant=s role
was to present legal arguments to the court, not to humiliate, shame,
embarrass, demean, or insult opposing counsel or parties.  Like the statements denigrating judges,
personal attacks on other litigants and their lawyers also demonstrate a lack
of respect for the legal system and the administration of justice.[8]








Pro se
litigants, like parties represented by counsel, should focus on legal points,
not personalities or perceived character flaws. 
Litigants should not assail the intelligence, ethics, morals,
upbringing, or integrity of others involved in the case unless such matters are
legitimately at issue and within the bounds of fair argument.  Even then, litigants should avoid the use of
inappropriate language and inflamatory rhetoric.[9]  Restraint, tolerance, and self-control tend
to foster civility.  Name-calling,
stridency, and rudeness have the opposite effect.  Incivility does not advance a litigant=s legal
position, but only tends to eclipse or obscure whatever legal points he
intended to make.  Incivility is not only
ineffective but also ill-advised.  At a
minimum, courts and those appearing before them expect and deserve civility and
courtesy from all participants in the legal process.[10]


Inappropriate
conduct and incivility threaten the pursuit and administration of justice in
that they damage the public=s
perception of our legal system, undermine the credibility and authority of the
courts, and subvert the effectiveness of the legal process.  Because appellant=s motion
for rehearing en banc contains inappropriate comments, it is altogether proper for the court
to strike it, but there is no good reason to grant appellant=s motion for an extension of time to
file another in its place.  Although
appellant has acknowledged that he has demonstrated a lack of respect for this
court and has offered an Aapology,@ there is
not the slightest suggestion of any true contrition on appellant=s
part.  His motion to withdraw hardly
conveys a sincere sense of regret or respectfulness, nor do the other filings
he has submitted to this court before or since. 
Indeed, after filing his motion to withdraw, appellant has continued to
engage in the same unacceptable conduct with no indication that he will attempt
to follow a different course in his future dealings with this court. 

The
frequency, number, and intensity of appellant=s verbal
onslaughts against opposing parties and their counsel, the lower court, and
this court signal more than a mere lapse in judgment.  Rather, they constitute a pattern of abusive
and inappropriate behavior. Appellant has continued to conduct himself in this manner even after acknowledging that such
conduct is inappropriate.  This unacceptable behavior is
an affront to the administration of justice. 
We should  protect the
effectiveness and credibility of this court and the legal process from any
further recurrence of this conduct.  For this reason, the court should
deny appellant=s request for an extension of time to
file another motion for rehearing. 








Conclusion

Pro se
litigants who come to court for justice bear an important responsibility to
conduct themselves with dignity and decorum and to show respect for judges,
opposing parties, counsel, and all others participating in the legal process.  This court expects nothing less from
appellant.  Today the court grants
appellant another opportunity to present his arguments on rehearing.  Should appellant demonstrate in his future
dealings with this court the same lack of respect and incivility that have
characterized his filings in this case, such inappropriate and unacceptable
conduct could subject him to serious consequences, including contempt or other
sanctions. 

 

/s/        Kem Thompson Frost

Justice

Judgment rendered and
Order and Concurring and Dissenting Opinion filed September 9, 2004.

 

Panel consists of Chief
Justice Hedges and Justices Frost and Guzman. 

 











[1]  In his motion
for rehearing en banc, appellant (1) complains generally about the panel=s disposition of his issues on appeal, (2) asks the
court to grant en banc review in order to vacate the panel=s order denying his request to file a 130-page
appellant=s brief, and (3) requests the court to reconsider its
denial of oral argument in the case. 





[2]  The following
excerpt is one of several personal attacks in appellant=s motion:

 

The
corrupt and fraudulent opinion also defames and discredits the entire Texas
legal profession and judiciary, the legal system and the justice they have a
sworn duty to administer.  The sham,
fraudulent opinion and its compromise of the new Chief Justice is not secret.  Its corruption is now known by the panel and
its staff, the defendant attorneys, $M West, retired Judge Work, the Harris
County Court House rumor mill, defendants= four
(4) retained attorneys and their supervisors and superiors at Andrews &
Kurth, the Andrews & Kurth rumor mill, the Houston Bar rumor mill, etc.,
etc.





[3]  See The Texas Lawyer=s Creed, IV (1) (AI will always recognize that the
position of judge is the symbol of both the judicial system and administration
of justice.  I will refrain from conduct
that degrades this symbol.@).





[4]  See Misc. Docket No. 99-9012, Order of
the Supreme Court of Texas and the Court of Criminal Appeals.





[5]  In AAppellant=s First
Amended Brief,@ appellant refers to appellees as A[c]orrupt, [m]ean spirited [g]overnment [o]fficials.@ Appellant=s brief
further states:

 

How many Adispicable@ personal lies about p and about the issues of ds= undisclosed evid. of this case did the Isbell
campaign=s $M consigliere and bagman add, off the record, to
the myriad of formal Adispicable@ lies in
their unretracted, now eighteen (18) month old ds=
mtn.s.j.?

 

Would Pasadena=s
Boasted ARoy Bean@
Surrogate Lie To Slander Plaintiff?  He
did, but the trial court wouldn=t enforce p=s
discovery and continuance requests needed to examine ATHE LAW@ and
witnesses to his oral ABean@ flautulence.

 

The trial court was a model of this firm fairness
until Isbell/West=s $M election day drew nearer.  If d Isbell and his sponsor, A$M SANCTION@ West
were as principled as they arrogantly portray themselves, they would not have
authorized the dispicable fraudulent ds= mtn.
s.j. to be prepared and filed in Atheir@ name.   

 

In AAppellant=s Motion
to Exceed Page Limits,@ filed August 16, 2004, appellant states that ADefendants= poor
mothering . . . is the root cause of all this folderol and excessive billing.@    

 





[6]  For example,
in AAppellant=s
Verified Motion to Postpone Submission and Demanding Oral Argument to the
Court,@ appellant refers to appellee=s counsel as Adefendants= latest corrupt, unethical defendants= attorney IV@ and to
one of appellees= lawyers as an Aunprincipled,
corrupt and dishonest young attorney.@  In this same filing, appellant states:

 . . . [D]efendants= attorney IV maintains the unethical recidivist
corrupt Pasadena public official and >Judge
Roy Bean= tradition by relying on the Nazi propagandist, Joseph
Goebbels= tactic that repeating the shams, fabrications and
lies of defendants= motion for summary judgment will unethically persuade
the Court ...





[7]  Though not an
issue on appeal, in appellant=s reply brief, appellant accused the trial judge of Apolitical or personal bias.@  In AAppellant=s
Verified Motion to Postpone Submission and Demanding Oral Argument to the
Court,@ appellant made personal attacks on the trial judge=s character and integrity, stating: 

 

 . . . Judge
Work ignored plaintiff=s objections and critical analysis and accepted
defendants= attorney I=s
obvious fabrications and misrepresentations B
apparently as a professional courtesy to an unprincipled, corrupt and dishonest
young attorney and his influential law firm.

 

In other filings, appellant accused the trial judge of
all sorts of nefarious motives for the trial court=s rulings.  For
example, in AAppellant=s
Verified Motion to Postpone Submission and Demanding Oral Argument to the
Court,@ appellant states: 

 

As noted, in rebuttal, even Judge Work himself wrote
and stated several substantial misrepresentations, which weren=t considered material until defendants= attorney IV decided to use this personal and
professional moral weakness of Judge Work to bolster his fraudulent
misrepresentations to this Court.

 

 . . . [T]he
[trial] Court granted defendants several very Aliberal,@ and even Aexparte
[sic],@ extensions and trial continuances to enable them to
try to get their sham, fabricated, contradictory >fairy
tale= motion for summary judgment invented, suborned and
drafted.@

 

In AAppellant=s Motion to Exceed Page Limits,@ filed August 16, 2004, appellant refers to the trial
court=s ruling as a A>Star
Chamber= judgment.@





[8]  See Standards for Appellate Conduct, ALawyers= Duties to Lawyers,@ 1 (ACounsel will treat each other and
all parties with respect.@); Standards for Appellate
Conduct, ALawyers Duties to the Court,@ 10 (ACounsel will not permit a client=s or their own ill feelings toward
the opposing party, opposing counsel, trial judges or members of the appellate
court to influence their conduct or demeanor in dealings with the judges,
staff, other counsel, and parties.@).





[9]  See Standards for Appellate Conduct, ALawyers= Duties to Lawyers,@ 5 (ACounsel will not make personal
attacks on opposing counsel or parties.@); The Texas Lawyer=s Creed, III. 10. (AI will avoid disparaging personal
remarks or acrimony towards opposing counsel . . . [and] parties.@).





[10]  See Standards for Appellate Conduct, ALawyers Duties to Clients,@ 9 (ACounsel will advise their clients
of proper behavior, including that civility and courtesy are expected.@); Standards for Appellate
Conduct, ALawyers Duties to the Court,@ 8 (ACounsel will be civil and
respectful in all communications with the judges and staff.@).